Jared Villery. This case requires us to revisit the issue of prosecutorial misconduct. Counsel, let me ask you a question to make sure I've got the record right. When I read this case, I thought the prosecutor was just way out of line, and the fact that he presented a chart meant that it was premeditated. He planned to analogize this home invasion or not to 9-11, or else he wouldn't have prepared the chart. However, it looks like the California Court of Appeals thought the same thing, that it was way out of line and the prosecutor committed misconduct. So I was thinking, we don't have to decide whether he committed misconduct, just what needs to be done about it. Is that correct? I think that's right, Your Honor. Not only was the chart prepared before the arguments because they all occurred in one day, it was presented without alerting the court or defense counsel. The real point of my question is, do we have to decide whether the prosecutor was out of line, or should we just assume he was out of line and go from there, that there was prosecutorial misconduct and go from there? We should accept the factual finding. The California Court of Appeals said there was prosecutorial misconduct? Yes, they did. In fact, they said there was a clear misconduct, an egregious misconduct. Judge Kleinfeld is getting to us. Then what do we have to decide? Then I think we have to decide... The real issue is the harmless error, right? Well, I think that's one of the issues, but I think the real issue is, is there a D-1 unreasonableness application? You're saying it was unreasonable to find the prosecutor committed misconduct? I don't think you're saying that. No, not at all. I'm saying under D-2, we can and should accept the fact finding of clear prosecutorial misconduct, but we should then ask whether the affirmance, nevertheless, despite egregious prosecutorial misconduct, constitutes an unreasonable application of federal law. And there, I couldn't see where it did. Your best case seemed to be Virick, but in that case, the guy actually was a German spy during wartime, as I recall. Here, there's this ridiculous analogy to 9-11. Well, it's not totally ridiculous in context, but it was inflammatory, out of line. But these people aren't Al-Qaeda terrorists. The defense story is, we're just selling them some fake dope, and they were mad because we ripped them off. It wasn't really dope at all. And the complaining witnesses say, no, this was just a home invasion,  so it's just a question of who was lying. Well, I admit that Darden and Donnelly are a tough standard, but at some point in time, the court has to ask, when is enough is enough? And just because Mr. Villery may not be a Saudi Arabian national, as my colleague from the States suggests, I don't think changes the analysis. Because in Virichek, which is one, I think, of several strong cases, there are many much more recent cases holding that these appeals to patriotism and the demonization or vilification of an ordinary defendant violate due process. Mr. Kennedy, I know very well that you're very familiar with Ed Buck. Yes. All too familiar, Your Honor. Indeed. Indeed. We all have that feeling, I'm sure. But as my colleague has suggested, you're emphasizing the first part, which is that this was misconduct. The District Court, I mean the Court of Appeals, clearly found that. But here, both under Watson and, I gather, under the federal standards. So the real question is, the Court of Appeals said, yeah, there was misconduct. But there was no prejudice because, number one, the jury appeared to be offended rather than persuaded. Number two, the jury was properly instructed. And three, the evidence was overwhelming. What's wrong with that? Under AEDPA, I'm not talking about in terms of an appropriate level playing field. But given what we deal with, why aren't we bound by those three exculpatory elements that were cited by the State Court of Appeals? Well, we are bound by AEDPA. But it's the devil's in the details on how to apply it. And what I would say is this. At some point in time, you cross a line. In fact, the Court of Appeals talks about this crossed the line. It was egregious. It crossed the line. That's not at issue. That was the point of my first question to you. Well, I'm sorry I'm slow. I'm going to try to get it to Judge Kleinfeld. And at one point, the Court of Appeals says, this kind of conduct is dynamite to a jury because not only is it improper, inflammatory, irrelevant argument, but it starts to bring and introduce facts into the record from the prosecutor as an unsworn witness that may not even be true. And so my concern is this. Darden and Donnelly are tough standards. But if the Court of Appeal that looked into this and found it and calls it this bad, how can it not infect the trial with unfairness? But under your argument, you would never. . . I mean, if you have a really bad constitutional violation, you're almost arguing for a per se rule. Correct? Well, I think we could under Brack's footnote, a nine error, which is a different. . . I don't see how you could. I mean, I look at your cases, and in Darden, the prosecutor was similarly outrageous, just bad conduct. And what the Supreme Court said was that it's not enough that the prosecutor's remarks were universally condemned. The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. That means hammering on a table about how outrageous the prosecutor was doesn't get you to home plate. And then the Supreme Court says that the appropriate standard is the narrow one of due process, not the broad exercise of supervisory power. The prosecutor's argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused, such as the right to counsel or the right to remain silent. That case is like this one. The prosecutor is way out of line, and the Supreme Court says it's still not a due process violation. What's the difference? I respectfully disagree. In Darden, the prosecutor is emoting and using outrageous language in a capital case, but he's talking about the defendant and his conduct in the case. In this case, there is a misstatement of the evidence because the California Court of Appeal even notes it. We don't know that the prosecution's chart and his version of what happened in the airplanes is clear. It was pretty extreme here. I mean, the prosecutor said, first witness you saw was Mrs. Turman, a pathetic figure, worked and struggled all her life at a little furniture store, and a woman was robbed, sexually assaulted, and had her husband slaughtered before her eyes by what would have to be a vicious animal, and then it goes on. The prosecutor goes on like that. It's pretty extreme. I didn't mean to interrupt. He's addressing the victim impact evidence. He's talking about the case. The death penalty case. And here we're talking about people trapped in an airplane with absolutely no reason to have been hurt, and we're juxtaposing that with this case. I don't see it as being more outrageous because of the reference to 9-11. The prosecutor shouldn't have done it, and it's obvious it was no spur-of-the-moment thing. He was responding inappropriately to an argument that two people could not possibly have held a bunch of cross-players or something at bay, and I immediately thought of the scene in the John Wayne movie where it's just the same thing, and he says, yep, you'll kill me, but I'll kill one or two of you first. And the prosecutor evidently had not seen the movie, so he didn't think of that argument, and he used 9-11 instead. But I can't see where it's actually as bad as Darden. Well, I disagree, and I say it because Darden has terrible language, but, you know, this case was quite a bit different. You have the LMU lacrosse team, and nothing against them. I mean, that's my alma mater. You're speaking on behalf of Loyola Law School, right? That's true, Your Honor, but, you know, this case, the idea that this is an overwhelming evidence case is a real stretch. The jury deliberated three days, 12 hours, and it is... But, my friend, what I'm still struggling with is the fact that the Court of Appeals found the error. They clearly found what he did was wrong. No question. First prong, no question. The question, then, is how do you get around the fact they found that the jury appeared to be offended rather than persuaded, that the jury was properly instructed, and that the evidence was overwhelming? Now, I know you well stated the extreme nature of what was done here, but you still have to get around what the Court of Appeals said. Under AEDPA, how do we do that? However moved we are by how you characterize what the prosecutor did here, how do we get around the Court of Appeals' conclusion in this? Are they just flat-out wrong? If so, what standard do we look to? Well, how we get around it is to show an objective, unreasonable application of Donnelly-Darden under D-1. Could I ask you a question? I just want to clarify this because I'm just kind of going back and looking at our cases. It seemed to me that we had said in a couple of cases, starting in Alito v. Crones, that actually, you know, because BRECT subsumes the AEDPA standard, that we just basically, as they said there, we apply the BRECT test without regard to the state court's harmlessness determination. Do you agree with that? Yeah, well, I agree that BRECT is ultimately the standard that applies on habeas. So do we need to look at deference when we get to this point? Do we just say, look, we're looking at the record. We have to make a determination under BRECT on harmlessness, and it's not a question of defer or not defer. Straight up, what does the evidence show? It shows what the state court said, of course. I mean, that's one characterization of it, but it shows other things as well. So I guess my bottom line is, how does the deference to the state court even matter at all once we get to the constitutional violation and application of BRECT? Well, I think you have to independently apply BRECT because the state court clearly didn't. Well, we have to independently apply it, so why in the world do we even look at what the state court said? Why aren't you arguing, well, this is the evidence, and then, of course, we'll hear, of course, from the other side, this is the evidence in a broader context or however they would argue it. I mean, aren't we kind of going down the wrong path to be talking on the BRECT analysis with respect to deference that we're looking at on the other first prong? Well, you may have identified a better path. With AEDPA, often there are different paths, and I think your Honor is correct, that in applying BRECT, if you independently evaluate the record, it was a closed case. The reporting officers didn't believe the LMU lacrosse team, and the victims didn't report the crime they claimed they had experienced. They moved on to another home and drank and partied, which is why the LAPD responding officers were skeptical that anything had occurred. What about the eyewitness identification? Well, the eyewitness identifications would normally be incredibly powerful, but in this case they can't be powerful because they missed the point. The defense was this is a swear-off between two 18-year-old Beverly Highs kids and the LMU lacrosse team. And one said, we were robbed and made an insurance claim and called the police under very suspicious circumstances. And the other group, which includes my client, said, yes, we were there. We were up to no good. We were selling fake marijuana. They're mad, and so they're wrongfully implicating us. It sounds like it's just a jury question, and the jury answered it. They did, after being inflamed with a completely improper 9-11 argument. And there's just one other thing, and that's why I think it's wrong. That's why it's not allowed, because that's why the prosecutor did it. Under Brecht, it's even more complicated in this case because Brecht usually talks about a substantial and injurious effect. Look, you're conceding it's Brecht, not Chapman, that controls, so it doesn't have to be harmless beyond a reasonable doubt. And I think you're conceding, and you have to concede on this, I think, that under AEDPA, we don't just decide whether the California Court of Appeals was wrong in its application of Darden and Donnelly. They have to have gone beyond wrong to being unreasonable in their application of Donnelly and Darden. And, gee, those two cases say the bad comments that really were a lot more directly related to the case before the jury were wrong, but they didn't so inflame as to, I can't remember the verbal formula they used, they didn't so inflame as to amount to a due process violation. So it seems like the California court could reasonably read that to mean that even some pretty bad misconduct by the prosecutor still isn't a due process violation. The language is infect the trial with unfairness, and I think it's unfair for a prosecutor to deliberately interject a completely irrelevant matter into a close case argument, especially when... You don't think anybody in that 12-person jury could go back to the jury room and think, wait a minute, these guys aren't Al-Qaeda terrorists on an airplane? That had nothing to do with anything. I don't think that's what I'm arguing, because this is why I cited... Because I was educated by this, too. I cited some Brandeis-style, I guess, sites of social science research. What the social science research says is that Americans get extremely anxious and judgmental and frustrated when they're confronted with 9-11 references and issues, and that's why it was done. And the final thing on Brecht, I just want to talk about footnote 9 error. The standard is better than Chapman, because when the error is deliberate and especially egregious error, or error combined with a pattern of prosecutorial misconduct, it's essentially a per se type harmful, and this court said that in Hardinet. Every time we've gone up to the Supreme Court from the Ninth Circuit with structural error or some other case where we said the error is so bad we don't decide whether it was harmful, we get reversed. I've been to the Supreme Court once, and I'd be happy to take your case there, too. Okay, well, why don't we hear from the other side? You can do it either way, you know. Whether you win or lose, you still have the opportunity. Good morning. Deputy Attorney General Jay McAleenan on behalf of Respondent Appellee Rewarding. Turning to the heart of this case, this is, at the end of the day, an EBPA case. So the question is, was it unreasonable? Could no fair-minded jurist determine that these comments did not so infect the entire trial as to render it unfair? That's a constitutional determination, and that's what the Court of Appeal held. If we keep pulling California's problems out of the fire, don't they train these prosecutors to behave themselves? If it makes the Court feel better, I can tell you this prosecutor has since retired from the DA's office. I can't speak to that issue. I don't know. I mean, this really was intentional premeditated wrongdoing by the prosecutor. It was certainly premeditated in the sense that... He had a prepared chart. He had a prepared chart. The chart is, by the way, text. It's simply the same thing that he said. I've looked at the chart. Yeah, it's a visual aid to make it even stronger than... I understand, but it's not, to be clear, it's not airplanes. It's not burning buildings. It's literally text. It's what he actually said. Goodness. But clearly he thought about it. Clearly he expected it to be in the summation. He did wrong on purpose. Well, obviously it wasn't accidental. It wasn't a slip of the tongue, so distinguish it from that. But at the end of the day, this is not a harmless air prejudice analysis. The California Court of Appeal expressly held that it was not a due process violation. So, again, we do have Edper deference. Do you agree that if it were a due process violation, that changes the ballgame? The standard is much higher. In an Edper case? Yeah. Well, I would say we still have Brecht analysis. I would say there's an overlap in the analysis. But you've got Darden and De Cristoforo and so on that seem to raise the standard up a little higher, even in an Edper context, right? Yes. It is intentionally broadly stated, and we know from the Supreme Court, that when we, the Supreme Court, say something broadly, we intend to give the states broad latitude in making the determination. But basically, because the District Court of Appeal did consider the due process argument, in effect, we're looking at the unreasonable application on the due process issue, right? Why aren't we just looking at Brecht anew, basically? It's harmless air under Brecht, yes or no? No, no. We're not. We're not. And that's an important distinction to count on. I want to get that out there. Okay. A Brecht would simply be you, in the first instance, looking at, not in the first instance, but independent of what the California Court of Appeal looked at, to determine whether it was harmless. Here we have, in a very explicit, it's at page 42 of the Exeter records, page 2 of the California Court of Opinion, it explicitly says, well, I can just give you the quote, it's, though we strongly disapprove of the prosecutor's conduct, we are unable to include that it, and it's quoting Donnelly at this point, so infected the trial with unfairness as to make petitioner or its appellants' convictions a denial of due process. So with that, we have an express finding on the federal constitutional issue. Therefore, there is due process. Therefore, it is in this course simply looking, in the first instance, if you will, at a prejudice, at a substantial and injurious effect. But turning to whether it was reasonable for the California Court of Appeal to hold that there was no due process here, I think we have to look at, we talked about Darden and Donnelly. I probably don't need to go over them again. I have trouble, incidentally, with the overwhelming evidence thing. It does look like it's two bad kids who graduated from Beverly Hills High last year versus the lacrosse team, and it took the jury a long time to decide who to believe. Well, which way does that cut? It cuts against overwhelming evidence, probably. It cuts in favor of it being a serious jury question. But it cuts in favor of it not so infecting the trial as to render the whole thing unfair. Oh, you're saying if the jury had come in right away, that might mean that they were inflamed. They were inflamed. If they took a long time, that means they're not inflamed. Twelve hours. And let's keep in mind, nine days of trial. I believe it was 17 witnesses, though. My brother counsel can correct me if I'm wrong on this. Every victim testified. Petitioner testified. But more importantly, we need to look at the verdict form, or excuse me, the verdict that the jury came back with. An inflamed jury goes into the jury room, takes about an hour to get acquainted, another hour at most to come back and say, thank you very much. Guilty, guilty, guilty. I've had them come back in 20 minutes. Even better, even better. That didn't happen. We had the jury come back on kidnapping the most serious offense, which carries a life imprisonment in California, where they're not guilty. We also know not only did they come back not guilty, they specifically asked a question about the aspiratation requirement. Specifically at page 1060 of the supplemental excerpt of record, the question is as follows. Please explain or clarify, quote, a distance that is substantial in character, specifically in character, and the definition of kidnapping. Court came back, gave them instruction again. They decided, okay, aspiratation has not been met. We're going to convict them on the lesser included of false imprisonment by menace or violence. That's not a runaway jury. That's not an inflamed jury. Your argument is basically given the sequence of how the jury deliberation played out. And the verdict. And the ultimate verdict. Most importantly. That this couldn't have really been so inflammatory, or you would have had a flat across guilty on all. Flat across, and on the first degree burglary charge, the jury hung 11-1 not guilty. So, again, if we're talking inflamed, it's very simple. You go back. You come out with guilty, guilty, guilty. You say thank you. And you go home. That's not what happened here. Further, I do want to point out that we have a properly instructed jury. Again, in Darden, that was held to be one of the important factors. And included in there is that statements made by the attorneys during trial are not evidence. And that the jurors are not to be influenced by pity. My question about that, and I appreciate where you're going, but that's what they say in every trial. And if that could, like, paste over something really bad, where would we be? Well, first of all, the Supreme Court has said it in this context, so it's important there. But it's important to distinguish it in cases where, for example, a prosecutor might misstate the law. That isn't what happened here. The problem with the prosecutor's statement is not one that goes directly to the law. So here we have a properly ‑‑ my point is we have a properly instructed jury which understood the law. If we look at the verdict, it clearly was able to parse through the evidence. And then lastly, and I grant you this is a direct analysis question, not a due process question. But I do think it's overwhelming evidence. We had all of this evidence on one side. And to be clear, the officers didn't come in and say ‑‑ sure, it's 11 witnesses on one side and two on the other. But the 11 had an hour to get together on their story, and they're all friends, and they don't like these other two. But that's not what the evidence was. The evidence was they went immediately to someone else's house. And the evidence was 15 to 20 minutes later they called the police after saying, should we or shouldn't we? Again, keep in mind, the petitioner and his co‑defendant had them all write down their home addresses, checked it against their driver's licenses, and said, we're watching you. We're going to kill you if you call the police. So you can understand how they might be a little hesitant to. But as far as the overwhelming evidence, the petitioner had a chance to tell his story. He did testify. His story was patently absurd. His story was he set up a drug deal with somebody named, I believe it was Will. And when asked, how do you know who Will is, he said, well, a black guy named Fred who I met in Westwood, don't know his address, don't know his last name, but I met him and he said I could set up this drug deal. Well, he set it up for me. He further said, well, I called one of the victims to set up the drug deal. When asked, okay, did you call from home? No, I called from somebody else's phone, so I don't really have a record of it. I can't remember whose phone I called from, but I called it was someone else. He was then asked, well, how about the car you used for the drug deal? Well, that wasn't my car either. That was another fellow. I couldn't give you his name, et cetera, et cetera. So my only point is this was not simply one side presented its evidence. The other side presented its evidence. One side presented a very consistent story. Again, not necessarily on the details because there's always some distinction in perceptions of an action. I don't know. I can still see that going either way. Fair enough. Fair enough. Fair enough. But, again, just to wrap up, this is at the end of the day at 2254. One must find that no fair-minded jurist could disagree as to whether this so infected the entire trial as to render it unfair. We think it's apparent that's not the case here. I don't know if the Court has any other questions. Thank you. Thank you. We used a lot of time, but you can have a minute for rebuttal. Many thanks, Your Honor. Unlike in Darden and in Donnelly, defense counsel here requested an instruction when the improper argument occurred. They begged the judge to instruct the jury that this was irrelevant and should not be considered, and the judge refused. And while my colleague from the Attorney's General Office says that the jury was not inflamed because of the length of the deliberations, we have a much more tangible piece of evidence in the record of inflammation, and that is at the motion for a new trial, the parties discussed the fact that when this argument occurs, some jurors begin mugging and reacting physically, mugging. The Court of Appeals takes that as they were offended by the argument. But, in fact, all we know is that they physically reacted to the argument, which is consistent with the social science and legal articles that I have cited in my brief. You're right on that, but they could have just been reacting. 9-11? You're comparing this to 9-11? Are you out of your mind? Yes, but I think, Your Honor, young youth of color already have it so hard in trial in this country, the last thing they need are irrelevant, inappropriate references to terrorists and further comparing them to the most demonized group in American culture. They face enough obstacles in the courtroom. They don't need these in addition to it. And the prosecutor was very experienced, and he didn't tell anyone he was going to put that blue screen up because he knew exactly what he was doing. Thank you. I would like to thank both of you for your very helpful arguments and excellent argument this morning. The case of Valerie V. Holland is submitted.
judges: Kleinfeld, McKeown, Smith